Doyle J. WILLIAMS, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. WD 37756.

Missouri Court of Appeals,
Western District.

April 15, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 22, 1986.

Application to Transfer Denied
July 15, 1986.

Doyle J. Williams, pro se.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and TURNAGE and BERREY, JJ.

TURNAGE, Judge.

Doyle J. Williams[1] appeals the denial of his motion under Rule 27.26 to vacate the judgment and sentence of death entered upon his conviction for capital murder.

Williams complains principally of ineffective assistance of counsel. Affirmed.

Williams was charged with capital murder in Callaway County but the trial was moved to Clay County on a change of venue. Williams was convicted of the murder of Kerry Brummett. The killing of Brummett was an effort by Williams to cover up the burglary of a physician's office in Auxvasse and the theft of prescription pads. Williams was also convicted in a separate trial of the murder of Dr. Domann, the doctor whose office was burglarized.

The evidence in the Brummett trial revealed that Williams and John Morgan enlisted Betty Coleman, one of Williams' girl friends, to meet Brummett in Jefferson City for a date. The plan was for Coleman to drive Brummett to a deserted area near the Missouri River in Callaway County where Williams and Morgan would be lying

---

1. Williams discharged the public defender who represented him in the hearing on this motion and proceeds in this court pro se.

in wait. The plan proceeded on schedule and when Coleman delivered Brummett to the location, Morgan and Williams assaulted him and a pair of handcuffs was placed on Brummett. Williams had obtained the handcuffs from a friend who was on the Auxvasse police force. Brummett wound up in the Missouri River and his body was recovered seven days later.

The judgment and sentence of death was affirmed in *State v. Williams,* 652 S.W.2d 102 (Mo. banc 1983).

The 27.26 motion was filed in Clay County and Williams disqualified the judge who presided at the murder trial and the cause was assigned to another judge. After a number of hearings the court entered detailed findings of fact and conclusions of law.

The evidence revealed that Williams was represented at the murder trial by Thomas Marshall public defender in Callaway County. Marshall entered the case prior to the preliminary hearing in March of 1981. Marshall had been an attorney since 1968, had served as prosecuting attorney in Randolph County for two terms, and had tried hundreds of cases. The family of Williams hired Charles G. Hyler to represent Williams. Hyler agreed to enter the case on the condition that Marshall remain on the case and Marshall did so. Hyler was retained in August of 1981, before the trial started on September 14, 1981. Hyler was admitted to practice in 1959 and had been a prosecuting attorney for eight years in St. Francois County. He testified that he spent about twenty-five per cent of his time handling criminal cases. Marshall hired an investigator to work on the case and Marshall indicated that after his appointment and throughout the trial he had spent the majority of his time working on this case. There was evidence from Marshall that the attorneys had spent literally hundreds of hours preparing for trial.

Both attorneys testified that a principal difficulty in preparing Williams' defense was the fact that Williams could not account for his activities on the night of October 9 and early morning of October 10,

1980, when the murder of Brummett occurred. When the state filed a motion for discovery seeking to determine if Williams was relying on an alibi defense, Williams gave his attorneys five possible alibis. It was not until virtually the day of trial that Williams finally said his alibi would be that he was in bed with his girl friend Nina Potts.

Williams testified in this case to his complaints against the attorneys. Williams testified that he is a college graduate and works in the law library in the penitentiary.

Williams concedes that counsel requested a first degree murder instruction which was refused but contends counsel failed to raise the refusal of this instruction as a violation of his federal constitutional rights. The court in *Williams,* 652 S.W.2d at 112[21], held that the trial court correctly refused to give a first degree murder instruction and relied on *State v. Baker,* 636 S.W.2d 902 (Mo. banc 1982) *cert. denied,* 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983), for its holding. In *Baker,* the court held that second degree murder is the correct lesser included offense to be instructed upon in a capital murder case to vindicate federal constitutional rights. 636 S.W.2d at 905[4]. The court in Williams' trial did give a second degree murder instruction.

Williams next contends that the court failed to give an instruction on second degree felony murder even though it gave an instruction on second degree murder. As will be noted, Williams raises instructional error in several points. Claims of error in instructions cannot be raised in 27.26 proceedings. *Brager v. State,* 625 S.W.2d 892, 895[8, 9] (Mo.App.1981). This court will exercise its discretion to examine these contentions. The claim that the court should have given a second degree felony murder instruction lacks any substance because second degree felony murder is not a separate and substantive offense. *State v. Clark,* 652 S.W.2d 123, 128[5] (Mo. banc 1983). The court in *Clark* again stated that the proper lesser degree

offense to be submitted in a capital case is second degree murder.

■ Williams contends that counsel should have offered an instruction patterned after MAI–CR2d 3.60 to limit the effect of the evidence concerning the theft of the prescription pads, attempts to obtain drugs with forged prescriptions and the murder of Dr. Domann. Such instruction would have advised the jury that they could consider such evidence on the issues of motive and intent, absence of mistake or accident, presence of a common scheme or plan and for the purpose of deciding the believability of Williams' own testimony. The instruction could also have told the jury it could not consider such evidence for any other purpose. Evidence was introduced concerning the theft of the prescription pads, the forgery of prescriptions and the killing of Dr. Domann. The receipt of this evidence was approved in *Williams,* 652 S.W.2d at 110[10]. Marshall testified that he was the attorney primarily concerned with instructions and he considered offering MAI–CR2d 3.60 but decided against doing so because in his experience that instruction would only highlight and reinforce the evidence of other crimes in the minds of the jury. The court in *Love v. State,* 670 S.W.2d 499, 502[2–4] (Mo. banc 1984), held that "[a]n objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel." Marshall had an objectively reasonable choice whether or not to offer the instruction and decided the consequences outweighed the benefits. This was certainly a reasonable choice and cannot supply the basis for a finding that he was ineffective on this ground. Williams contends that *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), mandates that such instruction be offered. *Spencer* does not require that the instruction be given.

■ As will be developed more fully hereafter, the key witness against Williams was John Morgan who assisted Williams in the killing of Brummett. Williams contends that Morgan was a drug addict and that counsel should have offered a cautionary and guiding instruction concerning the testimony of an admitted drug addict. It is well settled that MAI–CR2d 2.01 contains the only instruction on the weight and value of the evidence and the believability of witnesses. Notes On Use following that instruction state that except as may be specifically provided, no other or additional instruction may be given on the believability of witnesses, or the effect, weight or value of their testimony. Thus, a separate instruction relative to the believability and weight of Morgan's testimony was not available. *State v. Lang,* 515 S.W.2d 507, 510–11 (Mo.1974).

■ Williams contends counsel failed to properly investigate and locate witnesses favorable to the defense because they failed to locate and produce Larry Pirner at trial. Pirner testified at the hearing on this motion that he was the night manager of the Mark Twain Restaurant in Jefferson City where Coleman met Brummett prior to taking him to Callaway County. Pirner said that he saw Brummett in the restaurant on the night of October 9 with a woman who was not Betty Coleman. Pirner said that he left the restaurant and the State of Missouri in February of 1981, and did not return to Missouri until he was extradited on a criminal charge in September of 1981. The evidence revealed that Marshall's investigator had gone to the restaurant and interviewed a number of persons. He was told that Pirner had left and no one knew how to contact him. The court on this motion found that the investigator had gone to the restaurant and located two waitresses who said that Brummett had been in the restaurant on the fatal night with Betty Coleman. The court also found that Pirner had left Missouri and did not return until extradited.

Under these circumstances it cannot be said that there was a failure to adequately investigate to locate Pirner. By Pirner's own admission, he was in California from February until September of 1981 and it is undisputed that other employees at the res-

taurant did not know where he had gone or how to reach him.

■ Williams contends that Hyler did not properly question Roger Hazlett concerning his knowledge of events which occurred in the early morning of October 10. At the murder trial there was evidence Williams and Morgan went to the Hazlett home in the early morning of October 10 and burned their bloody clothing in the front yard. Williams contends that Hyler failed to ask Hazlett the proper questions during his investigation so as to reveal that Hazlett had information which would have refuted Morgan's testimony that Williams and Morgan burned their clothing at Hazlett's home. Williams contends that Hyler simply asked Hazlett what he knew and did not ask specific questions. Contrary to Williams' contention Hyler testified that he talked with Hazlett and covered Hazlett "from the water front in all directions and he just flat told me he was drunk and asleep ... and he didn't know anything about it." This evidence supported the finding by the trial court that there was no dereliction in the investigation.

Williams contends that counsel should have discovered Jesse Maxwell and called him as a witness. Maxwell testified at the 27.26 hearing that he saw Morgan about 1:00 a.m. on October 10 in a parking lot in Cedar City. The murder occurred around 1:45 a.m. on that day. However, Maxwell admitted that he did not report that he had seen Morgan until about ten months after Williams had been convicted. Maxwell testified that he had talked with the Callaway County prosecutor prior to the trial but failed to mention that he saw Morgan because he did not think it was pertinent. Maxwell further stated in his testimony on the motion that he could not remember if he had seen Morgan at 1:00 a.m. on October 9 or October 10. It is obvious that there was no failure of investigation in failing to locate Maxwell.

Complaint is made that counsel failed to call Robert Day to testify that Day had borrowed money from Williams at 9:30 p.m. on October 9 at Williams' home in Fulton.

Hyler testified that he had Day attend the trial and talked with him in the hall. He stated Day was with a girl friend who told Hyler that if Day testified that he was at Williams' home on the evening of October 9 she would testify that Day was not there at that time. After the girl friend made that statement, Day told Hyler he could not remember whether or not he was at Williams' home. Hyler testified that he talked with Marshall and Williams and told them about his conversation with Day and the girl friend, and the conclusion was reached that they could not accomplish anything with Day. This evidence does not support a conclusion that counsel was ineffective for failing to call Day. Further, Williams makes no effort to demonstrate how it would have been impossible for him to have been at home at 9:30 p.m. and still have been involved in a murder that occurred several hours later just a short distance away.

Complaint is made about the failure to call Pamela Mealey at trial. On appeal the court noted that Mealey testified at the hearing on the motion for a new trial that she had seen Brummett leave the restaurant with a woman who was not Coleman. *Williams*, 652 S.W.2d at 116–117. Williams now contends that Mealey's testimony would have supported that of Pirner to indicate that Brummett did not leave the restaurant with Coleman. Williams does not elaborate on the contention with reference to Mealey in his brief. The court in *Williams* indicated the contention had been that Mealey had told her story to the officials but that they had suppressed this favorable evidence. The court noted that the trial judge had found Mealey's testimony was not credible. *Id.* at 117. There is no basis shown to indicate ineffectiveness concerning the discovery or production of Mealey.

■ Williams contends his attorneys were ineffective for failing to object to a portion of the prosecutors final argument. Complaint is made 1) of the failure to object when the prosecutor argued that handcuffs Kay Lepley saw in Williams' posses-

sion prior to the murder were the same ones given to Williams by a police officer, 2) that trash samples taken from in front of Hazlett's house contained plastic material that probably came from a tennis shoe, and 3) that Williams killed Brummett to cover up his murder of Dr. Domann who he killed to avoid a forged prescription charge. All of these arguments are shown to be reasonable inferences derived from the evidence. The prosecutor has the right to argue reasonable inferences and to draw such inferences which he believes in good faith to be justified. *State v. McDonald,* 661 S.W.2d 497, 506[13–16] (Mo. banc 1983), *cert. denied,* — U.S. —, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). There is nothing to indicate that the inferences drawn by the prosecutor were improper or unsupported by the evidence.

■ Williams contends counsel failed to properly cross-examine John Morgan. As noted, Morgan was the main witness for the State. Morgan admitted that he had given prior inconsistent statements to investigating officials and admitted that he had lied to them when he first denied any participation in the killing of Brummett. Morgan further admitted that he had been granted immunity from prosecution for the killing of Brummett. Williams points out the number of inconsistent statements made by Morgan and the fact that he was granted immunity. All of this was brought out and made abundantly clear to the jury. Nevertheless Williams contends that counsel failed to properly cross-examine. Williams principally focuses on the number of inconsistent statements made by Morgan and the grant of immunity. Since all of this was presented to the jury Williams fails to show any ineffectiveness. In addition, the extent of cross-examination and the subjects covered must in virtually every case be left to the judgment of counsel. *Friend v. State,* 607 S.W.2d 841, 843[4] (Mo.App.1980).

Williams contends that counsel failed to bring out that Kay Lepley had been granted immunity on an unrelated charge for her testimony in the murder trial. The premise on which Williams bases his argument is that Lepley had been granted immunity. Lepley testified at the murder trial that five days before the murder she saw Williams with a pair of handcuffs. The court in the previous appeal stated that the testimony of Lepley was merely cumulative because the Auxvasse police officer had already testified that he had given a pair of cuffs to Williams. *Williams,* 652 S.W.2d at 111[14]. The court in *Williams* further stated that the allegation had been made that Lepley had been granted immunity but the record did not support such contention. *Id.*

In this case both Lepley and the prosecutor testified that no immunity had been granted Lepley and the court found that Williams failed to prove such allegation. The record fully supports the court's finding.

■ Barbara Rea testified at the murder trial that she had loaned her car to Betty Coleman on the night of the murder. Williams contends that Rea was coerced into testifying by a threat to take away her child. Rea did not testify at the hearing on the motion. The only evidence to support Williams' contention was the testimony that someone had heard that Rea may have been threatened. The court found there was no evidence to support Williams' claim concerning Rea and that finding is supported by the evidence.

■ Williams contends counsel failed in their investigation to discover that a detective in the Callaway County Sheriff's department damaged his car to the extent of $600 when he attempted to drive to the murder scene near the river. Williams argues that this shows the terrain was so rough that automobiles could not travel the area where Morgan said he and Williams had driven on the night of the murder. He faults counsel for not bringing out such evidence. The detective testified at the hearing on the motion that his car was damaged when he drove through a low spot which was filled with water as a result of rain from a few days earlier. All of this occurred sometime after the murder. Oth-

er evidence at the motion hearing showed there were dirt roads in and around the murder scene which were passable without difficulty. This contention is lacking in any evidentiary support.

Williams next contends counsel failed to properly object to the introduction of evidence of other crimes, mainly the burglary of Dr. Domann's office, the passing of forged prescriptions and the murder of Dr. Domann. Williams concedes the court in *Williams*, 652 S.W.2d 110[10], found that such evidence was properly admitted but contends the admission of this evidence violates his federal constitutional rights. In *State v. Shaw*, 636 S.W.2d 667, 672[6] (Mo. banc 1982) *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982), the court held that relevance is the touch stone of due process. In *Williams* the court held that the evidence of the other crimes was relevant. In that circumstance there can be no violation of Williams' federal constitutional rights in receiving evidence of the other crimes.

Williams further contends that counsel failed to advise him that in the event Williams' testified an instruction could be offered to direct the jury that it could consider Williams' prior felony convictions only on the question of the believability of his testimony. Williams testified that he was never advised that such an instruction could be given and because of this ignorance, he elected not to testify. Williams now contends that he did not testify because he was fearful the jury could use the convictions as substantive evidence of his guilt.

Marshall testified that he told Williams an instruction could be given which would advise the jury as to what use it could make of the prior convictions.

The trial court found that counsel discussed with Williams the possibility of submitting a limiting instruction and that Williams made a voluntary, intelligent, and informed decision not to testify. The record fully supports this finding by the court.

Williams contends counsel was ineffective for failure to properly request a continuance and to present that issue on appeal. Williams contends the application for continuance was not accompanied by the required affidavit and that the motion should have contained more facts. The question of continuance was presented on appeal and the court in *Williams*, 652 S.W.2d at 108–109[4, 5] noted that the trial date was set three months before trial was to commence and that Hyler entered his appearance on August 24, 1981, prior to the trial date of September 14. The court noted that Marshall had represented Williams from the inception of the case which was at least six months prior to the trial. The court stated there was no showing that Marshall was not ready for trial and that Williams had failed to sustain the burden of demonstrating that the denial of a continuance was prejudicial to his case.

The trial court on this motion found that the trial record in evidence refuted any contention that counsel failed to present any facts or information which would, if submitted, have warranted the granting of a continuance. The question of continuance was passed on in the appeal and a 27.26 motion may not be utilized for the purpose of obtaining another review of an issue already decided in a direct appeal. *Sweazea v. State*, 515 S.W.2d 499, 501[1] (Mo. banc 1974).

Williams contends that the evidence was insufficient to support the jury verdict of guilt. The court in *Williams*, 652 S.W.2d at 111[15–19], held the evidence was sufficient to support the verdict. Williams comments that the point on appeal was not framed in terms of the federal constitution. Obviously if the court found the evidence sufficient, this finding satisfies the federal constitutional rights of Williams.

Williams contends that even if the multitude of allegations considered up to this point did not individually deprive him of effective assistance of counsel, the cumulative effect of such contentions did deprive him of effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668,

686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–93[8] (1984), the Court stated:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

Viewing Williams' claims by this benchmark, it cannot be said that Williams was in any way deprived of effective assistance of counsel.

Williams next contends that the court failed to instruct on first and second degree murder and argues that *State v. Baker*, 636 S.W.2d 902 (Mo. banc. 1982), *cert. denied*, 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983), does not correctly rule the question. As heretofore noted this contention has already been discussed and the court in *Williams*, 652 S.W.2d at 112[21], held that under *Baker* a first degree murder instruction was not proper. This 27.26 motion is not to be used as a second appeal. *Sweazea v. State*, 515 S.W.2d 499, 501[1] (Mo. banc. 1974).

Williams contends that § 565.001, RSMo 1978 (repealed 1984), should have been construed strictly against the state. He concedes this argument was presented on direct appeal but not framed in terms of federal constitutional rights. The court in *Williams*, 652 S.W.2d at 114 discussed Williams' contention relative to the statute and decided adversely to him. This same contention is not open to a second review on this motion. *Sweazea v. State, supra.*

Williams contends the verdict director was improper. Again the court in *Williams* held the verdict director was proper. 652 S.W.2d at 114–115. Such holding precludes further review by this court.

▮ Williams contends the court erred in failing to advise him that he had a constitutional right to proceed pro se. Williams made no request to proceed pro se in the murder trial. In *State v. Williams*, 681 S.W.2d 948, 950[2] (Mo.App.1984), the court held that when a defendant does not request that he be allowed to represent himself, the court is not required to advise him of that option. Thus, the court was not obligated to advise Williams that he had the right to proceed pro se absent any request that he be allowed to do so.

▮ Finally, Williams raises three arguments which were not presented to the trial court. Briefly these are that the prosecutor stated that Morgan had been granted immunity in all counties and not just Callaway, that the state failed to disclose a police report stating that Morgan had said he had no knowledge of the murder, and that the state took property belonging to Williams prior to the trial and because of this he did not have funds to hire a lawyer. The first two matters were brought out in the murder trial and the last matter was the subject of a law suit pending at the time the hearing on the 27.26 motion was held in which Williams was suing certain officials. In any event these matters are not reviewable because they were not presented to the trial court in the 27.26 motion. *Moore v. State*, 624 S.W.2d 520, 522[4] (Mo.App.1981).

A careful review of the record convinces this court that Williams was represented by two experienced lawyers who spent many hours in preparation for trial and who had the assistance of two investigators for the purpose of locating witnesses. There is no evidence that any witness favorable to Williams was not located.

The record is clear that the attorneys were working under the handicap of not knowing which of five possible alibis Williams was going to use. In addition, Williams could not tell his attorneys where he was on the night of the murder until almost the day of trial. This court is convinced that Marshall and Hyler gave Williams effective representation and did all any attorney could have done to insure that all of Williams' constitutional rights, both state and federal, were protected.

The judgment is affirmed.

All concur.