Doyle **WILLIAMS**, Appellant,

v.

**STATE of Missouri**, Respondent.

No. 51253.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 5, 1987.

Motion for Rehearing and/or Transfer
Denied June 2, 1987.

Doyle Williams, pro se.

William L. Webster, Atty. Gen., Duane E. Butler, Asst. Atty. Gen., Jefferson City, for respondent.

SMITH, Presiding Judge.

Movant, Doyle Williams, appeals from the order of the trial court denying his request for post-trial relief under Rule 27.-26. We affirm.

Williams was convicted in October, 1981, of the capital murder of Dr. A.H. Domann in Callaway County, Missouri. He received a sentence of life imprisonment without the possibility of probation or parole for 50 years. The State sought the death penalty. That conviction was affirmed in *State v. Williams*, 662 S.W.2d 277 (Mo.App.1983) (*Williams II*). Shortly prior to that trial Williams was convicted of the capital murder of Kerry Brummett, also in Callaway County. In that case he was sentenced to death. That conviction was affirmed in *State v. Williams*, 652 S.W.2d 102 (Mo. banc 1983) (*Williams I*). The Brummett killing conviction was attacked in a Rule 27.26 proceeding and denial of relief under that Rule was affirmed. *Williams v. State*, 712 S.W.2d 404 (Mo.App.1986) (*Williams III*). The two murder cases are "inextricably" interwoven. *Williams I*, l.c. 106.

In the case before us movant alleged in his petition and supplements thereto thirty-seven charges of ineffectiveness of counsel, fourteen charges of prosecutorial misconduct, seven charges of trial error of alleged constitutional dimension, and one charge of violation of double jeopardy rights arising from his treatment in prison. A change of judge was granted from the original trial judge. After three days of hearing at the state penitentiary, encompassing 835 pages of transcript, thirty one exhibits of movant and 20 exhibits by the state, the trial court found against movant on all allegations. The trial court's find-

ings, conclusions and opinion (primary and supplemental) are seventy-four pages long. On appeal movant challenges findings concerning fourteen allegations of ineffectiveness of counsel, five allegations of prosecutorial misconduct, and one allegation of trial error.

Williams had assistance of counsel at the 27.26 hearing but handled most of the questioning of witnesses, trial objections, and discussions with the court and counsel himself. It is apparent that he is highly intelligent, was thoroughly prepared, and possessed a strong legal background for a layman. His briefs in this court were filed *pro se.*

We review the record to determine whether the findings of the trial court are supported by evidence. Movant bears the burden of establishing his right to post-conviction relief and we can reverse only if we find that the trial court's findings are clearly erroneous. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Rule 27.26(j); *Medley v. State,* 639 S.W.2d 401 (Mo.App.1982) [1]. We defer to the trial court's findings of credibility.

Williams was originally charged with two counts of capital murder—one involving Brummett, the other Domann. The counts were severed and the Brummett case was tried in Clay County on a change of venue. The Domann case was tried in Marion County, also on a change of venue. Thomas Marshall, a public defender was appointed to represent defendant on both charges. Shortly prior to the trial of the Brummett killing private counsel, Charles Hyler, was retained by movant's family and was lead counsel in that case. Marshall remained in the case as co-counsel as a condition of Hyler's accepting the representation. Marshall was movant's attorney in the Domann murder trial.

Marshall has been an attorney since 1968, and had served as prosecuting attorney for Randolph County for two terms. He had served in the Judge Advocate General's Corps where he defended "hundreds" and prosecuted "hundreds" of cases. He had tried in excess of eighty jury cases in and around Randolph County. He utilized

two investigators during his representation of Williams. He and the investigators interviewed in excess of 100 potential witnesses and Marshall took numerous depositions, including three of the main prosecution witness, John Morgan. In addition, Marshall attended four trials of related cases—movant's trial for attempting to pass a forged prescription, movant's trial for the murder of Brummett, movant's girl friend Betty Coleman's trial for the murder of Brummett, and the trial of another girl friend, Nina Potts, for arson. He observed the testimony and demeanor of Morgan and other key state witnesses at these trials.

The background of the murders is important. Dr. Domann's office was burglarized and property was stolen by Morgan and movant. Amongst that property were blank prescription pads. Movant and Morgan then discussed means of utilizing the pads. Brummett saw the pads in movant's possession. Movant attempted to utilize forged prescriptions in a Columbia drug store to obtain a controlled substance and was arrested and charged with attempting to obtain a controlled substance by fraud. Williams confided to Morgan that he could avoid conviction if Dr. Domann did not testify. Williams subsequently told Morgan he had killed Dr. Domann and suggested that Brummett also be killed. Morgan, Betty Coleman, and Williams then carried out the murder of Brummett. Extensive investigation of the murders was conducted by the Mid-Missouri Major Case Squad—a voluntary cooperative organization utilizing law enforcement officers of eight mid-Missouri counties. The Major Case Squad furnishes its services at the request of the chief law enforcement official of the county or locality involved.

During this investigation John Morgan was interrogated on several occasions, giving different stories, none of which was consistent with his testimony at trial. Eventually the prosecuting attorney of Callaway County promised Morgan that no prosecution would be instituted against him for any crimes he admitted to or testified concerning. Morgan became the primary

witness against Williams and Coleman in the Brummett case and against Williams in the Domann case as a result of this "deal."

■ Movant's most serious point on appeal, as we regard it, involves his charge of ineffectiveness of Mr. Marshall in his cross-examination of Morgan. *Strickland v. Washington, supra,* has established the guidelines to be followed in assessing a claim of ineffectiveness of counsel. First there must be a showing that counsel's performance was deficient and secondly, there must be a showing that that deficiency prejudiced defendant's defense. Movant's challenge to the conviction fails if either showing is insufficient. Counsel must provide reasonably effective assistance. The test is the fairness of defendant's trial. Judicial scrutiny of counsel's effectiveness must be highly deferential. The ultimate evaluation is the reasonableness of counsel's assistance. The distortions of hindsight based upon a lack of success are to be eschewed. Counsel is strongly presumed to have rendered effective assistance and to have made all significant decisions in the exercise of reasonable professional judgment. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. To establish prejudice the movant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Specifically movant challenges Marshall's failure to cross-examine Morgan on his "deal" with the state and on his prior inconsistent statements. Marshall readily acknowledged that his strategy, discussed with and concurred in by movant, was to avoid these areas in cross-examination of Morgan. He concentrated instead on Morgan's heavy drug addiction. This, combined with expert testimony as to the effects of such addiction on Morgan's mental condition, was designed to convince the jury of Morgan's unreliability as a witness

and to frame the possibility of Morgan as the sole murderer.

Marshall had observed the Brummett trial and three other trials in which exploration of the "deal" and inconsistent statements had been unsuccessful in producing an acquittal. He was also aware that in the Brummett trial, Williams' participation in the killing of Domann had come before the jury and the jury had assessed the death penalty. The matter of the "deal" was the subject of questioning during the voir dire examination of the Domann jurors. The jury was aware therefore that Morgan was testifying in exchange for a promise of non-prosecution. Morgan's prior criminal record was brought out during his direct examination by the state. Marshall based his cross-examination upon his concern that by "opening the door" concerning the deal he would allow the prosecution to carry across the threshold a complete recitation of the crimes for which Morgan would not be prosecuted, including the murder of Brummett and the burglary of Domann. He also wanted to avoid establishment of the closeness between Williams and Morgan and their frequent activities together as it would strengthen a jury's perception that if Morgan did participate in Domann's murder he did so with Williams. These same concerns were present as regards the prior inconsistent statements. Delving into the reason for such statements by the prosecution on redirect could well have established Morgan's efforts during the investigation to conceal direct involvement with Williams in the Brummett murder. As a result of Marshall's strategy, the jury was aware during the trial, including the punishment phase, only of Williams' complicity in the attempt to obtain a controlled substance by fraud. It imposed the lesser of the two punishments available to it.

■ We do not find anything about the choice of strategy unreasonable. Counsel must frequently make choices between all-out attempts at acquittal and mitigation of punishment. In a capital case such a choice assumes critical proportions. Counsel, where his client's life is at stake,

must surely not be classed as ineffective when he elects the choice of avoiding the death penalty by marginally reducing his chance to obtain an acquittal. Nothing in this record indicates that Williams had evidenced any indication to Marshall that only an acquittal was an acceptable outcome and in fact the record strongly indicates the contrary.

■ Williams challenges his attorney's actions on the basis that exploration of the deal and the inconsistent statements would not have opened the door to testimony concerning his involvement in other crimes. He bases this upon some limiting rulings in the Brummett case and the failure of Marshall to seek *in limine* relief. Clearly the nature and number of crimes for which Morgan was not to be prosecuted was relevant on the issue of his credibility. How far such an examination will be permitted to go in exploring the full scope of the deal is largely within the discretion of the individual trial court. Exercise of that discretion narrowly by one judge is no guarantee of a similar exercise by a different judge. A motion *in limine* is a purely interlocutory ruling, subject to change as the evidence develops. The door which Marshall feared opening could not have been closed if the judge determined during redirect that he would allow full exploration of the deal or the circumstances surrounding the inconsistent statements. The information which might have been brought through that door could well have insured a death penalty. In fact movant stated that very argument in his appeal of his death penalty in the *Brummett* case. *Williams I* [9 and 26,27]. It would be difficult indeed to conclude that counsel was ineffective in eschewing a strategy that proved unsuccessful in the death case when the different strategy pursued resulted in a lesser sentence here. We find nothing unreasonable about Marshall's strategy in carefully avoiding even cracking the door. We must defer to his judgment.

We have carefully reviewed movant's remaining assertions of ineffectiveness of counsel. Some are patently frivolous such as his contention that the failure of Mar-

shall to explain to him the instruction that would be given to the jury concerning the use it could make of movant's fourteen prior felony convictions in the event he testified effected the outcome of the trial. Others are refuted or not supported by the record. Others are premised upon counsel's failure to assert legally unassertable positions. None of movant's claims of ineffectiveness meet the test of counsel deficiency enunciated in *Strickland,* and none meet the test of prejudice enunciated there. An extended discussion of these points would have no precedential value and the findings of the trial court on these contentions are affirmed pursuant to 84.16(b).

■ Movant's points, five in number, alleging prosecutorial misconduct are similarly lacking in merit. The main issue raised is that the prosecution misled movant and his attorney into believing that Morgan had received freedom from prosecution for all crimes he disclosed including those committed outside Callaway County, the county of the prosecutor making the "deal." It is contended this misinformation prevented movant from cross-examining Morgan as effectively as he could have with the correct information. We do not find the evidence compelling that in fact other prosecutors had not agreed not to prosecute. But it makes no difference. The Callaway county prosecutor is an agent of the state. The agreement was by the state acting through the prosecutor. The state is bound by the deal and that includes prosecutors in other counties within the state. *State v. Burson,* 698 S.W.2d 557 (Mo.App.1985); *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). There was no misleading by the prosecution.

■ Movant also contends that the state illegally obtained evidence by use of fraud. This is based upon movant's conclusion that members of the major case squad lack the authority to act as police officers outside the county for which they work. Sec. 57.111 RSMo 1979 authorizes temporary commissions. There was evidence that it is standard practice for major case squad members to be given temporary commis-

sions in the county wherein they are working. We believe such authority is inherently bestowed by the acts of the sheriffs in each county agreeing to the formation of the major case squad initially.

Movant's remaining claims of prosecutorial misconduct are not established by the evidence viewed in the light most favorable to the trial court's findings.

Movant's final point is that the trial court erred in refusing to give certain instructions. Claims of error in instructions cannot be raised in 27.26 proceedings. *Williams III* [1, 2]. One of the instructions is not authorized in this state. The other is discretionary and movant and his counsel together decided not to request it.

Judgment affirmed.

DOWD and KAROHL, JJ., concur.