Betty COLEMAN, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 38293.

Missouri Court of Appeals,
Western District.

June 23, 1987.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Aug. 4, 1987.

Application to Transfer
Denied Sept. 15, 1987.

Robert Wolfrum, Asst. Public Defender, St. Charles, for appellant.

William L. Webster, Atty. Gen., Jatha B. Sadowski, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and PRITCHARD and TURNAGE, JJ.

PRITCHARD, Judge.

Appellant was convicted of complicity in the murder of one Kerry Brummett, committed by Doyle J. Williams and John Morgan in the early morning hours of October 10, 1980. Appellant's conviction was affirmed in *State v. Coleman*, 660 S.W.2d 201 (Mo.App.1983), wherein she received a sentence of life imprisonment without eligibility for parole until a minimum of 50 years was served. Williams was also convicted of capital murder, and his judgment and sentence of death was affirmed in *State v. Williams*, 652 S.W.2d 102 (Mo. banc 1983); and the denial of his motion to vacate the judgment and sentence under Rule 27.26 was affirmed in *Williams v. State*, 712 S.W.2d 404 (Mo.App.1986). Morgan was granted immunity from prosecution of all criminal charges against him in exchange for his testimony at the trial of appellant (and that of Doyle Williams). The sordid and bizarre facts of Brummett's murder may be found in the reported cases of *State v. Williams* and *State v. Coleman*, supra.

In her appeal from the denial of post conviction relief under Rule 27.26, appellant, by Point A 1. contends that her counsel was ineffective for failure to investigate and locate witnesses favorable to the defense. The first of these was one Larry Pirner, who was the night manager of the Mark Twain restaurant in Jefferson City, Missouri on October 9 and 10, 1980. Pirner testified on this hearing that he saw Kerry Brummett, the victim, at the restaurant on the night of October 9 with a young female who was not appellant, and that shortly after that he, Pirner, went to California. He had never seen appellant come into the Mark Twain restaurant, but he knew her previously from the Fulton area. Pirner acknowledged that he was extradited to the State of Missouri and was sentenced to two years imprisonment for passing bad checks on October 27, 1981.

Appellant's trial counsel did not personally interview employees at the Mark Twain restaurant but used a Mr. Weiss, his private investigator. Weiss testified that he

went to the restaurant and interviewed the day manager, Doug Campbell, who told him that Pirner had left the State of Missouri for California. Weiss also talked with waitresses, Georgia Sewell and Bonnie Birdsong, but not at the restaurant. Georgia testified at the trial (August 3, 1981) that Kerry Brummett came to the restaurant between 12:30 and 1:00 a.m., on October 10, 1980, and appellant joined him there. Bonnie testified also that she saw Brummett with appellant in the restaurant at about the same time. There was no testimony that at the time of Weiss' investigation that anyone knew where Pirner was in California.

■ Under these circumstances, appellant's trial counsel cannot be convicted of being ineffective. Pirner's whereabouts was unknown to him and to his investigator, Weiss. Nothing was shown that Pirner had any information which was available to appellant's counsel which might have been helpful to her in her trial. Besides, this same issue was presented by appellant's codefendant, Doyle J. Williams, in his hearing for postconviction relief. This court held therein, *Williams*, 712 S.W.2d at 407[5], that there was no inadequacy of counsel shown in any failure adequately to investigate and locate Pirner.

■ Next, appellant claims that her counsel was ineffective in his failure to call Roger Hazlett as a witness at her trial. It is appellant's contention that Hazlett's testimony would have refuted the testimony of key witness, John Morgan, as to events occurring at Hazlett's home on the evening of October 9 and the early morning hours of October 10. Appellant maintains that she was at Hazlett's home on the evening of October 9 or the morning of October 10, 1980, but Morgan's testimony was that she was at Hazlett's home with Williams and Morgan who were in the course of destroying evidence after the murder of Brummett.

On this hearing, appellant's trial counsel testified that he had spoken with Hazlett on the phone, and had determined that he was probably not going to be a very effective witness in appellant's behalf. Hazlett testified at this hearing that he did not remember appellant coming to his home at the time she said she did. What this contention amounts to, as the trial court found, is that it was a matter of trial strategy not to call Hazlett as a witness. See *Porter v. State*, 682 S.W.2d 16, 18 (Mo.App.1984). Counsel's exercise of the trial strategy prerogative not to call Hazlett as a witness is not a ground for post-conviction relief.

■ Next, appellant contends that her trial counsel was ineffective in failing to call Pam Mealy as a witness at trial. Pam testified on appellant's hearing on her motion for new trial that she was at the restaurant sometime after 1:30 a.m. on October 10 and saw Brummett with a woman who was not appellant. This testimony somewhat corroborates Pirner's testimony given in this hearing. In *State v. Coleman*, 660 S.W.2d 201, 220 (Mo.App.1983), Pam's testimony on the motion for new trial was considered. She testified that she wrote a report for the sheriff's office, but did not know who took her statement; she *did not* tell the officer that the woman who was with the victim was not appellant and she was shown no photographs of any persons. An investigating officer testified to his knowledge nobody interviewed Pam; her name was not on the investigating log; he did not have any report from her; and her name did not appear on a "lead card". Appellant argues that her counsel had the police reports that Pam said she had given and failed to interview and present her to the jury. As indicated, there was no proof that the reports existed so as to be available to counsel. She also argues that this evidence was suppressed by the state in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), but that issue, on the evidence, was ruled adversely to appellant on direct appeal, *State v. Coleman*, 660 S.W.2d at 220[19], and may not again be here presented. Thirdly, she argues that her counsel failed to make a reasonable investigation to discover Mealy. It was also held on direct appeal that there was nothing in Pam's testimony as to inject reasonable doubt or which

would result in a reversal of appellant's conviction. The contentions are without merit.

Jesse Maxwell testified that he saw John Morgan in Cedar City about 1:00 a.m., on October 10, and told Doyle Williams about it approximately a year after the murder. There was nothing in the record to show that appellant's counsel would have had access to this information at the time of trial, so counsel cannot be held to have been ineffective in failing to call Maxwell as a witness. *Battle v. State*, 674 S.W.2d 179, 181[3, 4] (Mo.App.1984).

▪ Appellant next contends that her counsel was ineffective for lack of investigation with respect to the immunity deal John Morgan made with the state in exchange for his testimony. The immunity matter was covered at trial, and appellant has not shown it to have been false, or that Morgan did not have immunity. Counsel did cross-examine Morgan about his deal with the state to show his motive to lie, and to impeach his testimony. The contention is without merit.

▪ Three matters raised by appellant relate to instructions she claims errors which arise to the level of ineffective assistance of counsel. She first contends that counsel should have seen that a first degree (felony murder) instruction should have been given in this capital murder case. The matter was covered in *State v. Coleman*, supra, on direct appeal, wherein *State v. Blair*, 638 S.W.2d 739 (Mo. banc 1982), and *State v. Baker*, 636 S.W.2d 902 (Mo. banc 1982), were cited for their holdings that first degree murder is not a lesser included offense of capital murder, hence no instruction on the subject is required. Appellant next contends that two cautionary instructions (on drug addiction and being a codefendant) should have been requested by counsel concerning the credibility of John Morgan. It has long been held that the only credibility instruction authorized is MAI–CR 2d 2.01—others are prohibited. See *Williams v. State*, 712 S.W.2d 404, at 407[4]; and *State v. Lang*, 515 S.W.2d 507 (Mo.1974). Counsel cannot be held to have been ineffective in failing to request prohibited instructions. The same holdings apply to a codefendant instruction as to Morgan's credibility [he was not shown to have been prosecuted as a codefendant]. The contentions are without merit.

Appellant contends her counsel was ineffective at trial in failing properly to question witnesses Kay Lepley and Barbara Rea. Lepley then testified that five days before the murder at a party, she saw Doyle Williams place a pair of handcuffs on appellant. Appellant claims that counsel failed to bring out that Lepley had been granted immunity by the state on an unrelated charge for her testimony in the murder trial. Lepley did not testify in this Rule 27.26 hearing, and the trial court correctly found that appellant failed to adduce any evidence that there was any agreement between Lepley and the state. Note that the same issue was raised and ruled adversely to appellant in *Williams v. State*, 712 S.W.2d at 409.

Rea had testified that she loaned her car to appellant on the night of the murder. Appellant claims that Rea (who did not here testify) was threatened by police, which the trial court found was not proved. No error appears with respect to rulings as to either of these witnesses.

None of appellant's Point I contentions are sustained that her counsel was ineffective, so her contention that there was cumulative error is without merit.

In Point II, appellant contends that her conviction was obtained by misconduct of the state in violation of her rights to due process and equal protection. She first alleges that John Morgan falsely testified as to his immunity and the state was aware of it. The matter is covered above in that there was no proof that Morgan's testimony was false. [It is difficult to fathom why, if Morgan did not have immunity from prosecution, he would incriminate himself in the murder.] The contention need not be further noticed—it is without merit.

Appellant contends that the state suppressed Exhibit No. 1, a statement dated

October 11, 1980, given by John Morgan to police. In a motion for further discovery filed July 27, 1981, counsel requested the identity of the officer who talked with Morgan on October 11, who submitted a handwritten statement to the Major Case Squad of that interview. A John C. Heymeyer was one of the officers whose name appears on the bottom of the last page. Trial counsel acknowledged in court that he had a copy of the report, although he stated that it was dated 11/10/80, apparently an error. The court below found that the exhibit was disclosed, and the record indicates that such finding is not erroneous. Appellant next contends that the state suppressed Exhibits 2 and 3, statements of Morgan. There was evidence before the court from a questioned document expert that these exhibits were forgeries, taken from State's Exhibit 4, with narrative portions changed and typed on a different typewriter. Exhibits 2 and 3 were not found in the Major Case Squad files. The trial court's finding that the documents were forgeries is supported by the record, and of course by reason of that fact, the state would not have had them in its possession to produce, and there was thus no suppression.

It is claimed that the state suppressed police reports of statements given by Larry Pirner. He testified on this hearing that he did not remember the names of the officers he talked to or whether they identified themselves as officers. There was thus no evidence that such police reports were given. As noted, on the same contention as to Pam Mealy, there was no evidence that she informed the state that the woman she saw with the victim on the night in question was not appellant. The court's finding that appellant failed to carry her burden of proving that the state had control of statements from either of these persons is not clearly erroneous. The issue of suppression of evidence was ruled adversely to appellant on her direct appeal. That there was no proof that Barbara Rea was threatened is ruled above, and the attempt to reargue it on this Point II is rejected, as is the reassertion of failure to give a first degree murder instruc-

tion and drug addiction and codefendant instructions (all said to be violations of the Missouri and United States Constitutions, and Missouri laws). Her contention as to the giving of Instruction No. 8, on the subject of acting in concert, and her contention that the evidence was insufficient for conviction were ruled against appellant on her direct appeal.

All of appellant's contentions in her Rule 27.26 appeal have been reviewed, and it is concluded that the trial court's findings and conclusion denying relief are not clearly erroneous.

The judgment is affirmed.

All concur.